KENJI M. PRICE #10523
United States Attorney
District of Hawaii

MARC A. WALLENSTEIN #10456
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850
Telephone:   (808) 541-2850
Facsimile:   (808) 541-2958
Email:      Marc.Wallenstein@usdoj.gov

ELINOR COLBOURN
Senior Counsel for Wildlife Programs
Environmental Crimes Section
U.S. Department of Justice
Room 4.103, 4 CONN
150 M. Street, NE
Washington, DC 20002
Telephone: (202) 305-0205
E-Mail:   elinor.colbourn@usdoj.gov

**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 0 8 2020

at _3_ o'clock and _30_ min. _P_ M
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 20-00072-JMS |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA |
| | ) | AGREEMENT |
| vs. | ) | |
| | ) | DATE: October 8, 2020 |
| HAMADA SUISAN CO. LTD., | ) | TIME: 2:15 P.M. |
| aka "Hamada Suisan Kabushiki | ) | JUDGE: Hon. J. Michael Seabright |
| Kaisha," | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorneys, the United States Attorney for the District of Hawaii and the Deputy Assistant Attorney General of the Environment and Natural Resources Division, and the defendant, HAMADA SUISAN CO. LTD., aka "Hamada Suisan Kabushiki Kaisha" (hereinafter "HAMADA SUISAN CO. LTD." or "the defendant") and its attorney, Michael Nakano, Esq., and Chris Tribolet, Esq., have agreed upon the following:

### THE CHARGES

1.      The defendant acknowledges that it has been charged in an Information with violating Title 16, United States Code, Sections 3372(a)(1) and 3373(d)(1).

2.      The defendant has read the charge against it contained in the Information, and that charge has been fully explained to it by its attorney.

3.      The defendant fully understands the nature and elements of the crime with which it has been charged.

### THE AGREEMENT

4.      The defendant agrees to waive indictment and enter a voluntary plea of guilty to the Information, which charges it with knowingly aiding and abetting

the attempted export of fish in violation of federal law.   The defendant is aware

that it has the right to have this felony asserted against it by way of grand jury

indictment.   The defendant hereby waives this right and consents that this offense

may be charged against it by way of the Information.   In return, the government

and the defendant agree to the following sentence pursuant to the provisions of

Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the specific terms of

which are set forth in ¶10(a) of this Agreement: a fine of $126,000, payable to the

Lacey Act Reward Account; a forfeiture money judgment in the amount of

$119,000, also payable to the Lacey Act Reward Account; and a period of

probation of three years.   The government further agrees to move to dismiss the

Criminal Complaint charged in Mag. No. 18-1347 KJM after sentencing.   The

government further agrees not to file any other charges against the defendant

arising out of this same conduct.

     5.     The defendant agrees that this Memorandum of Plea Agreement shall

be filed and become part of the record in this case.

     6.     The defendant enters this plea because it is in fact guilty of aiding and

abetting the export of fish in violation of federal law, as charged in the

Information, and it agrees that this plea is voluntary and not the result of force or

threats.

## PENALTIES

7.      The defendant understands that the penalties for the offense to which it is pleading guilty include:

a.      **A fine** of up to $500,000 or twice the gross gain or loss resulting from the offense and a term of probation up to five years.

b.      In addition, the Court must impose **a $400 special assessment** as to the count to which the defendant is pleading guilty.   The defendant agrees to pay this $400 to the District Court's Clerk's Office, to be credited to said special assessment, before the commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

c.      **Forfeiture.**   Pursuant to 16 U.S.C. § 3374, 18 U.S.C. § 981(a)(1)(C), & 28 U.S.C. § 2461, federal law requires the forfeiture of (1) all fish imported, exported, transported, sold, received, acquired, or purchased during the commission of the offense; and (2) all vessels, vehicles, and other equipment used to aid in the exporting, transporting, selling, receiving, acquiring, or purchasing of fish in the commission of the offense.   The property subject to forfeiture includes, without limitation:

4

1. All shark fins seized from crew members of the Kyoshin Maru No. 20 on or about November 7, 2018, in Honolulu, Hawaii;

2. The fishing vessel Kyoshin Maru No. 20.

If any of the property as a result of any act or omission of the defendant

3. cannot be located upon the exercise of due diligence;

4. has been transferred or sold to, or deposited with a third party;

5. has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or

6. has been co-mingled with other property which cannot be divided without difficulty;

the forfeiture of any other property of the defendant, up to the value of the property described above.

d.   **Restitution.**   The Court must also award restitution pursuant to Title 18, United States Code, Section 3663A, to the persons and entities victimized by the defendant's offenses.   The defendant understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office.   The defendant agrees to pay restitution for all losses caused by

5

the defendant's conduct, regardless of whether the counts of the Information

associated with such losses will be dismissed as part of this Agreement.

The parties jointly agree that no restitution is required in this case.

## FACTUAL STIPULATIONS

8.      The defendant admits the following facts and agrees that they are not

a detailed recitation, but merely an outline of what happened in relation to the

charge to which the defendant is pleading guilty:

a.      Marine Vessel Kyoshin Maru No. 20 (the "Kyoshin Maru")

was a 51-meter Japanese-flagged commercial fishing vessel engaged in long-line

tuna fishing at various times and locations in and around the Pacific Ocean,

including from in or about November 2017 to in or about November 2018.

b.      The Kyoshin Maru was owned, operated, and chartered by the

defendant , which is a commercial fishing business in Japan.   At the time, the

defendant also owned and operated one other commercial fishing vessel.

c.      In or about November 2017, the defendant, acting through

several different manning agents in Jakarta, Indonesia, entered into employment

agreements with a number of Indonesian nationals, in order to hire them to work as

fishermen onboard the Kyoshin Maru during the following year.

d.      One of the manning agents, who made employment

6

arrangements for two of the Indonesian nationals employed by the defendant, used written employment agreements, which were signed by the individual fishermen and the manning agent, and were executed in both Indonesian and English.   The agreements stated that the manning agent was acting "as the agent for the employer (=ship owner)."   The agreements further stated: "In case of any sales of shark fins, it is up to fishing master's decision whether to give share to the fishing worker or not."

        e.      The possession and sale of shark fins are regulated by several international treaties, to which both Japan and the United States are parties.   These treaties obligate member nations to pass domestic laws prohibiting the retention onboard of any part of certain protected shark species, including oceanic whitetip sharks and silky sharks; and to require shark fins to comprise no more than 5% of the weight of sharks on board, among other requirements.   Japan and the United States have passed domestic laws that implement these treaty obligations by restricting the shark fin trade.   The State of Hawaii goes beyond these treaty obligations and completely bans the shark fin trade.   It is unlawful to possess, sell, offer for sale, trade, or distribute shark fins in Hawaii.   It is, however, possible to sell shark fins lawfully in Japan and some other jurisdictions, under certain circumstances.   In any event, the defendant's corporate policy was to prohibit

shark finning.

       f.     The Japanese crew members and Indonesian fishermen boarded the Kyoshin Maru at Shimitsu, Japan on or about November 2, 2017, and began a one-year tuna fishing voyage.

       g.     The ship traveled to an area on the high seas, in the Southeastern Pacific Ocean, east-northeast of Tahiti, approximately one-third of the way from Tahiti to Mexico, where it engaged in commercial long-line tuna fishing.

       h.     "Long-line tuna fishing" involves setting long fishing lines between buoys.   Arrays of hooks are suspended from the long line, which are intended to catch tuna.   The long line often produces "bycatch," which are fish other than tuna that are inadvertently captured in addition to the tuna.   Shark is a common bycatch in the long line industry.   The nature of the bycatch is not known until the longline is retrieved by the fishing vessel and the fish are hauled out of the water.   The Kyoshin Maru's fishing master estimated that over approximately 301 fishing operations, during the course of the voyage an average of three to four sharks were caught as bycatch, resulting in a total of approximately 900 to 1200 sharks caught as bycatch.   The vessel caught approximately 330 tons of tuna over that same period.

i.      There is evidence that the government finds compelling that, when sharks were caught as bycatch by the Kyoshin Maru, the fishing master of the vessel directed the crew members to haul the shark into the vessel and kill the shark, instead of cutting the line and letting the shark swim free, in order to save the hook.   The crew members followed this instruction, though at times they cut the line when the fishing master was not looking, in order to avoid the danger of handling a live shark.

j.      Sometimes some of the fishermen engaged in shark finning during the voyage.   The fishermen sometimes cooked and ate the de-finned sharks as food, and other times they threw the de-finned shark carcasses into the ocean. Based on the fins recovered by the government, and witness statements, approximately 300 sharks were finned over the course of the voyage.

k.      The fishermen dried the shark fins without the corresponding shark carcasses, in plain view of the captain and crew.   There is evidence that the government find compelling that the Captain and the fishing master personally observed the shark finning that took place on the vessel, and did nothing to stop it.

l.      In or about November 2018, on its way back to Japan, the Kyoshin Maru stopped at a location near Honolulu, Hawaii, in order to allow the Indonesian fishermen to disembark, attempt to lawfully enter the United States,

9

and board flights from Honolulu to Indonesia (via Tokyo).

m.      On or about November 7, 2018, 18 Indonesian fishermen disembarked the Kyoshin Maru.   They boarded a water taxi, where they met a Vessel Agent from the local marine navigation corporation.   After the Kyoshin Maru dropped the fishermen off, it then departed for Japan.

n.      The Vessel Agent brought the Indonesian nationals on the water taxi from international waters to Pier 36 in Honolulu Harbor, where they met with a representative from U.S. Customs and Border Protection, who had previously been notified of their arrival, and were permitted to enter the United States.   Some of the fishermen had preexisting visas.   Others were granted "parole to depart" following a criminal history check.[1]

o.      The Vessel Agent then took all 18 of the Indonesian nationals directly to Honolulu International Airport, in order to board previously-ticketed flights to Indonesia, via Tokyo, on Al Nippon Airways.

p.      During routine screening of the Indonesian nationals' checked luggage by the Transportation Security Administration, several of their bags triggered alarms, and after a thorough search, at least 962 shark fins weighing

---

[1] "Parole to depart" is a form of discretionary authority, granted on a case-by-case basis, that allows a person to temporarily enter the United States without a visa, in order to promptly depart.

approximately 190 pounds (89 kilograms) were recovered from their luggage. The fins were located in luggage belonging to 10 of the 18 Indonesian nationals.

q.      Some of the fins were from oceanic whitetip sharks, *Carcharhinus longimanus*, which is a species listed as threatened under the Endangered Species Act (ESA) and in Appendix II under the Convention on International Trade in Endangered Species (CITES). Both the ESA threatened listing and the CITES Appendix II listing are enforced through the Endangered Species Act.

r.      Some of the fins were from bigeye thresher (*Alopias superciliosus*) and silky sharks (*Carcharhinus falciformis*), which are species listed as Appendix II under CITES.

s.      The parties agree for the purposes of this plea agreement and sentencing that the value of the shark fins at issue in this case is $57,850.

t.      The ten Indonesian nationals with shark fins in their luggage were arrested and eventually pled guilty to a violation of the Lacey Act in *United States v. Abdurahman et al.*, Cr. No. 18-00192 KJM.

u.      HAMADA SUISAN CO LTD., through counsel, promptly contacted the United States Attorney's Office and began cooperating with the investigation.

11

v.    The Japan Fisheries Agency, which is the government agency in Japan responsible for enforcement of Japan's shark finning laws, conducted a parallel investigation.   On March 27, 2019, the appropriate regulator in Japan found a violation of Japan's shark finning ordinances, and imposed an administrative penalty upon the Kyoshin Maru, specifically a "stoppage" that prohibited the vessel from operating for a period of 67 days, and also prohibited maintenance or repairs during the stoppage period.

w.    On or about August 20, 2019, defendant sold the Kyoshin Maru for approximately $238,000.   Defendant currently operates only one fishing vessel.

x.    The Kyoshin Maru did not operate and remained at port from the time it arrived in Japan after dropping off the fishermen in Honolulu, until the time it was eventually sold—a period of approximately 8 months, during which the vessel deteriorated.   For the purposes of this plea agreement, and in the unique circumstances of this case, the parties stipulate that $119,000 in substitute assets is appropriate in lieu of forfeiture of the Kyoshin Maru which is now beyond the control of the defendants.

y.    The Captain and fishing master of the Kyoshin Maru, as well as other Japanese crew members, are no longer employed by HAMADA SUISAN

CO. LTD.

9.      Defendant has since implemented a compliance plan, attached

hereto, including contracts that make shark finning grounds for termination;

posters in Japanese and Indonesian languages confirming that shark finning is

illegal and strictly prohibited; instructing crew members to release sharks by

cutting the branch line before the shark is hauled aboard; implementing a bonus

system if employees comply with the rules and regulations regarding shark finning;

and inspecting all luggage for shark fins before disembarkation. Pursuant to

CrimLR 32.1(a) of the Local Rules of the United States District Court for the

District of Hawaii, the parties agree that the charge to which the defendant is

pleading guilty adequately reflects the seriousness of the actual offense behavior

and that accepting this Agreement will not undermine the statutory purposes of

sentencing.

## SENTENCING STIPULATIONS

10.    Pursuant to CrimLR 32.1(b) of the Local Rules of the United States

District Court for the District of Hawaii and Section 6B1.4 of the Sentencing

Guidelines, the parties stipulate to the following for the purpose of the sentencing

of the defendant in connection with this matter:

a.      Rule 11(c)(1)(C): This Plea Agreement is entered into pursuant

to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which authorizes

the parties to agree that a specific sentence is the appropriate disposition of the

case.   The government and the defendant agree to the following sentence: a fine of

$126,000, within the statutory maximum and slightly more than twice the gross

gain from the violation; a forfeiture money judgment in the amount of $119,000,

which the parties agree represents, for the purpose of this plea agreement,

substitute assets for the fishing vessel Kyoshin Maru, which was an instrumentality

of the offense but has since been sold, and; a period of probation of three years

with the following special conditions: (1) the retirement and relinquishment of the

fishing license in Japan previously associated with the Kyoshin Maru; (2)

implementation of the compliance plan, and; (3) abandonment of any interest in the

shark fins seized from its crew in Honolulu in November 2018.   Defendant agrees

to provide to the Court cashier's checks in the full amount of each of the fine,

forfeiture money judgment, and special assessment, prior to the conclusion of the

sentencing hearing.   The parties believe that this sentence is appropriate in this

case in light of the nature and circumstances of the offense, and the history and

characteristics of the defendant, including: the seriousness of the offense; the need

for both specific and general deterrence; the cooperation of defendant; the

14

compliance plan that has been developed; the actions taken by the Fisheries

Agency in Japan; and the relatively small size of the defendant's business.

b.    Defendant understands that, pursuant to Rule 11(c)(3) of the

Federal Rules of Criminal Procedure, the Court may accept this Agreement, reject

it, or defer a decision until the Court has reviewed the presentence report.   If the

Court accepts the Plea Agreement, it will inform the defendant that the agreed

upon disposition of a sentence as set forth above will be included in the judgment.

c.    The parties agree that if the Court rejects the agreed upon

sentence, the defendant has the right to withdraw its plea of guilty pursuant to

Federal Rule of Criminal Procedure 11(c)(5)(B).   In addition, the parties agree that

if the Court rejects the agreed upon sentence, the United States shall have the right

to withdraw from the Plea Agreement.

d.    If Defendant permanently ceases all fishing operations, and

proves that it has done so to the satisfaction of the Probation Officer acting as the

Court's representative, then the terms of the compliance plan shall be suspended.

Such proof may include, for example: (1) proof of cancellation of applicable

fishing licenses; (2) proof of sale of fishing vessels; (3) proof of non-registration of

fishing vessels to Defendant and its affiliates; and (4) an affidavit or declaration

from a company representative that Defendant has not simply transferred its

15

fishing operations to another entity with a different name.   A declaration that Defendant, and its officers and directors and shareholders, no longer have a financial interest in any fishing business would likely satisfy this requirement.   If Defendant, and its officers and directors and shareholders, resume fishing operations, Defendant must promptly notify the Probation Officer and the United States Attorney's Office, and re-implement the compliance plan.

   e. As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit its involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

   11. The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing

offense level pursuant to Guideline Section 3E1.1(b)(2), if the defendant is

otherwise eligible.   The defendant understands that notwithstanding its present

intentions, and still within the Agreement, the prosecution reserves the rights (1) to

argue to the contrary in the event of receipt of new information relating to those

issues, and (2) to call and examine witnesses on those issues in the event that either

the United States Probation Office finds to the contrary of the prosecution's

intentions or the Court requests that evidence be presented on those issues.

12.    The parties agree that notwithstanding the parties' Agreement herein,

the Court is not bound by any stipulation entered into by the parties but may, with

the aid of the presentence report, determine the facts relevant to sentencing.   The

parties understand that the Court's rejection of any stipulation between the parties

does not constitute a refusal to accept this Agreement since the Court is expressly

not bound by stipulations between the parties.

13.    The parties represent that as of the date of this Agreement there are no

material facts in dispute.

### APPEAL/COLLATERAL REVIEW

14.    The defendant is aware that it has the right to appeal its conviction

and the sentence imposed.   The defendant knowingly and voluntarily waives the

right to appeal, except as indicated in subparagraph "b" below, its conviction and

any sentence within the Guidelines range as determined by the Court at the time of

sentencing, and any lawful restitution order imposed, or the manner in which the

sentence or restitution order was determined, on any ground whatsoever, in

exchange for the concessions made by the prosecution in this Agreement.   The

defendant understands that this waiver includes the right to assert any and all

legally waivable claims.

a.      The defendant also waives the right to challenge its conviction

or sentence or the manner in which it was determined in any collateral attack,

including, but not limited to, a motion brought under Title 28, United States Code,

Section 2255, except that the defendant may make such a challenge (1) as

indicated in subparagraph "b" below, or (2) based on a claim of ineffective

assistance of counsel.

b.      If the Court imposes a sentence greater than specified in the

guideline range determined by the Court to be applicable to the defendant, the

defendant retains the right to appeal the portion of its sentence greater than

specified in that guideline range and the manner in which that portion was

determined and to challenge that portion of its sentence in a collateral attack.

18

c.     The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

15.     In connection with the collection of restitution or other financial obligations, including forfeiture as set forth below, that may be imposed upon it, the defendant agrees as follows:

a.     The defendant agrees to fully disclose all assets in which it has any interest or over which it exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that the USPO will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The

19

defendant agrees to provide written updates to both the USPO and the United

States Attorney's Office regarding any material changes in circumstances, which

occur prior to sentencing, within seven days of the event giving rise to the changed

circumstances.   The defendant's failure to timely and accurately complete and

sign the financial statement, and any written update thereto, may, in addition to any

other penalty or remedy, constitute the defendant's failure to accept responsibility

under U.S.S.G § 3E1.1.

      b.     The defendant expressly authorizes the United States

Attorney's Office to obtain its credit report.   The defendant agrees to provide

waivers, consents, or releases requested by the United States Attorney's Office to

access records to verify the financial information, such releases to be valid for a

period extending 90 days after the date of sentencing.   The defendant also

authorizes the United States Attorney's Office to inspect and copy all financial

documents and information held by the USPO.

      c.     Prior to sentencing, the defendant agrees to notify the Financial

Litigation Unit of the U.S. Attorney's Office before making any transfer of an

interest in property with a value exceeding $1,000 owned directly or indirectly,

individually or jointly, by the defendant, including any interest held or owned

under any name, including trusts, partnerships, and corporations.

## FORFEITURE

16.     As part of its acceptance of responsibility and pursuant to 18 U.S.C.

§ 981(a)(1)(C) and 28 U.S.C. § 2461, the defendant agrees as follows:

a.     The defendant consents to the entry of a forfeiture money

judgment in the amount of $119,000, representing the value of the Kyoshin Maru

No. 20 in United States currency (the "Forfeiture Money Judgment").   The

defendant also will abandon all of its right, title, and interest in the following

property: All shark fins seized from crew members of the Kyoshin Maru No. 20 on

or about November 7, 2018, in Honolulu, Hawaii (the "Specific Property").

b.     The defendant acknowledges that the Specific Property and the

Forfeiture Money Judgment are subject to forfeiture pursuant to 16 U.S.C. § 3374,

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, as (1) fish imported, exported,

transported, sold, received, acquired, or purchased during the commission of the

offense; and (2) all vessels, vehicles, and other equipment used to aid in the

exporting, transporting, selling, receiving, acquiring, or purchasing of fish in the

commission of the offense, respectively.

c.     The defendant knowingly and voluntarily waives and agrees to

waive any and all constitutional, statutory, and other challenges to the forfeiture on

any and all grounds, including that the forfeiture constitutes an excessive fine or

21

punishment under the Eighth Amendment.   The defendant waives all constitutional, legal, and equitable defenses to the entry of and collection of the Forfeiture Money Judgment.   The defendant knowingly and voluntarily waives any right to a jury trial on the forfeiture of property.

          d.      The defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the government or the Court to complete the forfeiture and disposition of the property.   The defendant waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of forfeiture in the charging instrument, announcement of forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   The defendant acknowledges that it understands that the forfeiture of the property, if the government elects to conduct the forfeiture criminally, will be part of the sentence imposed upon the defendant in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, during the change of plea hearing.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to the preliminary order of forfeiture for the Specific Property and the Forfeiture Money Judgment becoming final as to the defendant when entered.

e.      The defendant agrees to waive all interest in the Specific Property in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, and to withdraw any claim that the defendant may have filed in such a proceeding.   The defendant further waives any other notice requirement that may apply to the administrative and/or civil forfeiture of the Specific Property.

f.      The defendant understands that the forfeiture of the forfeitable property does not constitute and will not be treated as satisfaction, in whole or in part, of any fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon the defendant in addition to the forfeiture.

g.      The defendant represents and agrees that, within the meaning of 21 U.S.C. § 853(p), the Forfeiture Money Judgment amount, $119,000, represents property subject to forfeiture that, as a result of any act or omission of the defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

23

(E) has been commingled with other property which cannot be divided without difficulty.

h.    Payment of the Forfeiture Money Judgment shall be made by cashier'scheck payable to the Lacey Act Reward Account

## IMPOSITION OF SENTENCE

17.    The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.   The defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

18.    The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

19.    The defendant understands that by pleading guilty it surrenders certain rights, including the following:

24

a.     If the defendant persisted in a plea of not guilty to the charges against it, then it would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.     If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and its attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict it unless, after hearing all the evidence, it was persuaded of its guilt beyond a reasonable doubt.

c.     If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.     At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The

25

defendant would be able to confront those prosecution witnesses and its attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on its own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

20.    The defendant understands that by pleading guilty, it is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to it, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

21.    If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw its guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that it makes by signing this Agreement or that it makes while pleading guilty as set forth in this Agreement may be used against it in a subsequent trial if the defendant later proceeds to trial. The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later

26

withdrawn.   The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it.   Under those circumstances, the United States may not use those statements of the defendant for any purpose.

22.    The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against it, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## COOPERATION

23.    The defendant agrees that it will fully cooperate with the United States.

a.    The defendant agrees to make its officers and employees available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but it understands it may have its counsel present at those conversations, if it so desires.

b.    The defendant agrees that its sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and

27

agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

        c.     Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

        24.    In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.   The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

        25.    Pursuant to Guidelines Section 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance

to authorities in the investigation or prosecution of another person who has committed an offense.   The defendant understands that:

      a.     The decision as to whether to make such a request or motion is entirely up to the prosecution.

      b.     This Agreement does not require the prosecution to make such a request or motion.

      c.     This Agreement confers neither any right upon the defendant to have the prosecution make such a request or motion, nor any remedy to the defendant in the event the prosecution fails to make such a request or motion.

      d.     Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

26.     The defendant and its attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

27.     To become effective, this Agreement must be signed by all signatories

listed below.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

30

28.     Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.

DATED: Honolulu, Hawaii, ___October 8, 2020_____._____ _

AGREED:

KENJI M. PRICE
United States Attorney
District of Hawaii


_____
MICAH SMITH
Deputy Chief, Criminal Division


_____
MARC A. WALLENSTEIN
Assistant U.S. Attorney


_____
ELINOR COLBOURN
Senior Counsel for Wildlife Programs
Environmental Crimes Section
U.S. Department of Justice


_____
MICHAEL NAKANO, ESQ.
Attorney for Defendant


_____
~~Mr. Shinichi Hamada~~ Michael J Nakano
~~Managing Director~~, Authorized
~~Personal~~ Representative Of
HAMADA SUISAN CO. LTD.
Defendant

31